620 So.2d 904 (1993)
STATE of Louisiana
v.
Johnnie F. DIXON.
No. KA 92 0842.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*906 Doug Moreau, Dist. Atty., Office of the Dist. Atty., Baton Rouge, for plaintiff/appellee.
Thomas Damico, Baton Rouge, for defendant/appellant.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
The defendant, Johnnie F. Dixon, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served. He has appealed, alleging eight assignments of error, as follows:
1. The trial court erred in allowing State Exhibits 28-32 to be introduced into evidence over the defendant's objection.

*907 2. The trial court erred in allowing a State witness to testify regarding a statement made by the defendant several years before the instant offense.
3. The trial court erred in excluding any evidence of the victim's use of alcohol or drugs on the night of the offense or in the past.
4. The trial court erred in denying the defendant's motion for a mistrial.
5. The trial court erred in allowing a State witness, Robert Faust, to testify regarding statements made by the defendant.
6. The trial court erred in denying the defendant's challenges for cause during jury selection.
7. The trial court erred in granting the prosecutor's challenges for cause during jury selection.
8. The evidence was insufficient to support the instant conviction.
Assignments of error numbers 5, 6, and 7 were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On the night of August 1, 1991, the defendant shot and killed his ex-wife, Dana Cox Dixon. The shooting occurred in the parking lot of Southdowns Lounge in Baton Rouge, Louisiana. Earlier in the day, the defendant had received permission from the victim to keep their five year old son, Brandon, for another night. Because of this change of plans, the defendant drove to Southdowns Lounge to leave a message for his girlfriend, Sara Langlois, informing her that he would have Brandon for the night and, therefore, could not meet her at the lounge as originally planned. When the defendant drove his truck into the lounge parking lot looking for Ms. Langlois' car, he saw the victim and her friend, Michelle Guillory Wilkinson, and began a short conversation with the victim. The victim was angry that the defendant had brought their child to the lounge at such a late hour (approximately 11:30 p.m.), and she wanted to take Brandon home with her. Brandon indicated that he wanted to remain with the defendant because he was afraid that he would not be allowed to see the defendant again. The defendant explained that he would take Brandon home as soon as he left a note for Ms. Langlois. The victim initially walked away but changed her mind and returned to speak with the defendant again. Ms. Wilkinson, who was holding the victim by the arm, tried to persuade the victim to leave; but she jerked away and stated: "I appreciate what you're doing, but you don't understand. Call the police, I want my child." Shortly thereafter, the defendant produced a pistol from his truck and fired three shots at the victim. One bullet struck the victim in the back and another in the chest. As Brandon exited the truck and ran toward the victim, the defendant turned the gun on himself and fired a single shot into his stomach. The victim was pronounced dead at a nearby hospital. The defendant underwent major surgery and eventually recovered from his self-inflicted gunshot wound.
At the trial, several state witnesses, including Ms. Wilkinson, indicated that the defendant and the victim were arguing over Brandon immediately before the shooting occurred. However, these witnesses stated that the defendant and the victim were not screaming or shouting at each other and that the argument was not "heated." Other state witnesses testified that, at various times in the past, the defendant had threatened to kill the victim due to their marital problems and arguments over the custody of Brandon; but these witnesses also indicated that they never took the defendant's threats seriously.
The defendant took the stand and admitted shooting the victim. He explained that he was upset, panicked, and felt threatened because the victim stated she was going to have him arrested and also stated that he would never see Brandon again. The defendant testified that, when he shot the victim, he did not realize what he was doing. He stated that once he realized he had shot the victim, he couldn't believe *908 what he had actually done. At that point, he wanted to die and shot himself. Finally, the defendant explained that he had bought the gun from his father in May of 1991. He indicated that he was carrying the gun because Ms. Langlois' husband had been following defendant and Ms. Langlois around and had threatened both of them several times.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant contends that the trial court erred in allowing five photographs of the victim (State Exhibits 28-32) to be introduced into evidence over his objection. Specifically, he argues that the sole purpose of these photographs was to unduly excite and prejudice the jury against him.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. The admission of allegedly gruesome photographs will not be overturned on appeal unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Hosford, 572 So.2d 242, 245 (La.App. 1st Cir.1990), writ denied, 576 So.2d 27 (La.1991).
State Exhibit 28 depicts the victim's face. State Exhibits 29-32 are photographs of the victim's chest and back, depicting the two entrance wounds and two exit wounds. After examining these photographs, we find that their probative value outweighed any prejudicial effect. These photographs are unpleasant but cannot be characterized as gruesome. State Exhibit 28 obviously was taken for identification purposes. The remaining four photographs depict the two entrance wounds and the two exit wounds from different angles and distances. These photographs establish that one bullet entered the victim's back and exited her chest. Since manslaughter was a possible responsive verdict, the number and position of the bullet wounds was important. Accordingly, we conclude that State Exhibits 28-32 were properly admitted into evidence over the defendant's objection.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant contends that the trial court erred in allowing a state witness, Torrie Lane Cox Taylor, to testify regarding a statement made by the defendant several years before the instant offense. Specifically, the defendant contends that this statement was inadmissible because it was irrelevant, an improper attempt to prove his bad character, and constituted hearsay.
LSA-C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
LSA-C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In questions of relevancy, much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
Ms. Taylor, the victim's stepsister, testified at trial concerning a statement made by the defendant a few years prior to the instant offense. At that time, the defendant and the victim were separated. *909 Ms. Taylor heard the defendant say to the victim: "If I can't have you, no one will ever have you if I can't have you."
In his brief to this Court, the defendant contends that the statement was inadmissible because "[t]he probative value of such evidence, so far removed from the time of the actual incident is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury." However, we find this evidence of a prior threat was relevant to the instant offense. Generally, the remoteness in time of prior difficulties or acts of violence between the defendant and the victim only affects the weight of such evidence, not its admissibility. Cf. State v. Martin, 458 So.2d 454, 459 (La.1984); State v. Thibeaux, 366 So.2d 1314, 1317 (La.1978); State v. Collins, 432 So.2d 369, 372 (La. App. 1st Cir.1983).
The defendant next contends that the statement was introduced in an improper attempt to prove his bad character.
LSA-C.E. art. 404 B.(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
We do not believe that this statement by the defendant falls within the scope of article 404 B.(1). Moreover, even assuming that this statement by the defendant is regarded as an other crime, wrong, or act within the meaning of article 404 B.(1), we find it was admissible to prove motive and intent. See State v. Qualls, 353 So.2d 978, 984 (La.1977).
Finally, the defendant contends that this statement constituted inadmissible hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801 C. Ms. Taylor repeated a statement made in her presence by the defendant. Therefore, this statement was an admission and was not hearsay. LSA-C.E. art. 801 D.(2)(a).
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, the defendant contends that the trial court erred in excluding from the trial any evidence of the victim's use of alcohol or drugs at the time of the instant offense or in the past.
At a pretrial hearing, the trial court ruled that the defendant could not introduce any evidence of past or present drug use by the victim. The trial court concluded: "Well, Dana Dixon is not on trial here, and I'm not going to let you put her on trial through the back door." For the reasons which follow, we find no error in the trial court's ruling.
If the defendant had presented a theory of self-defense, evidence of the victim's past and/or present use of alcohol or drugs might have been relevant. See State v. Johnson, 553 So.2d 865, 869-870 (La. App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990). However, in the instant case, self-defense was not a possibility, and the only issue presented herein was whether the defendant committed second degree murder or manslaughter. Under these circumstances, we find that evidence of the victim's use of alcohol or drugs, past or present, was irrelevant.
Furthermore, concerning the alleged evidence of the victim's past use of alcohol or drugs, we find the defendant has waived any possible error regarding such evidence by failing to proffer it for appellate review.
LSA-C.E. art. 103 A.(2) provides:
Error may not be predicated upon a ruling which admits or excludes evidence *910 unless a substantial right of the party is affected, and
* * * * * *
When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
At the pretrial hearing, the defendant never proffered this alleged evidence of the victim's past alcohol or drug use nor did he explain to the court how it was relevant. In fact, the defendant also did not identify the victim's blood-alcohol content at the time of her death or the amount or type of drug allegedly found in her system. These allegations are reviewable on appeal only because the prosecutor acknowledged at the pretrial hearing that the victim's test results indicated a blood-alcohol level of .034 grams percent and an apparently small amount of an indeterminate drug.
Even assuming, arguendo, that evidence of the victim's alcohol or drug use at the time of the offense had some slight relevance to the issue of whether or not the defendant was provoked into committing manslaughter, in light of the other evidence produced at the trial, we find any error in the exclusion of such evidence to be harmless beyond a reasonable doubt. The test for determining whether or not there is reversible error when the trial court erroneously refuses to admit defense evidence is that the appellate court must be convinced that the excluded evidence would not have affected the jury's determination. State v. Vaughn, 431 So.2d 358, 371 n. 8 (La.1982), on rehearing. While the defendant and the victim were arguing over their child before the shooting occurred, there is no doubt that the victim was unarmed and did not physically attack or threaten the defendant. The defendant and the victim were not screaming or shouting at each other. Witnesses to the argument did not describe it as "heated." Furthermore, Ms. Wilkinson explained that prior to the shooting, both she and the victim had consumed less than two beers each. Considering all of the above, we are convinced that the evidence of the victim's blood-alcohol content (.034 grams percent), or the fact that a trace amount of some drug was detected in her system at the time of her death, would not have affected the jury's determination herein. See LSA-C.Cr.P. art. 921.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial.
During the prosecutor's direct examination of Ms. Wilkinson, the following colloquy occurred:
Q Did you know the victim in this case, Dana Cox Dixon?
A Yes.
Q How did you know her? Tell me when you met her and describe your relationship for me.
A I met Dana about three years ago. She came into the shop to get her car fixed, and one other time of her asking for help because Johnnie had got put in jail for an incident.
Q Okay.
[Defense Counsel]: Your Honor, may I ask that the jury be excused.
Out of the jury's presence, defense counsel requested a mistrial based on Ms. Wilkinson's reference to the defendant's being put in jail. The prosecutor replied that the comment did not mandate a mistrial and that an admonition would be sufficient. The prosecutor also indicated that he had instructed the witness less than one hour earlier not to refer to the defendant's previous trouble with the law or drug problems. The prosecutor stated that Ms. Wilkinson was very emotional and very upset and that her remark was inadvertent and unintentional. The trial court denied the motion for a mistrial, explaining that in its discretion, an admonition to the jury to disregard the remark would be sufficient, unless defense counsel believed an admonition would focus the jury's attention on the issue. Thereafter, defense counsel declined the trial court's offer of an admonition.
*911 LSA-C.Cr.P. art. 770(2) provides for a mandatory mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Dietrich, 567 So.2d 623, 634 (La.App. 1st Cir.), writ denied, 568 So.2d 1079 (La.1990). However, such a remark by a witness does not require a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure the defendant of a fair trial. LSA-C.Cr.P. art. 771; State v. Odds, 430 So.2d 1269, 1272 (La.App. 1st Cir.1983).
LSA-C.Cr.P. art. 771 provides for a discretionary mistrial, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial under the provisions of article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Thompson, 597 So.2d 43, 46 (La.App. 1st Cir.), writ denied, 600 So.2d 661 (La.1992).
While this remark was improper, we do not consider it a deliberate attempt by the prosecutor or Ms. Wilkinson to unfairly prejudice the defendant. During further questioning, the witness admitted that she was "a little bit" nervous about testifying. Considering the entirety of her testimony, it is obvious she simply forgot the prosecutor's earlier instruction not to refer to the defendant's previous troubles with the law. The trial court decided that an admonition to the jury to disregard this remark was sufficient to assure the defendant a fair trial. However, the admonition was declined. Furthermore, this reference to the defendant being "put in jail for an incident" was not an unambiguous reference to a particular crime committed or alleged to have been committed by the defendant. See State v. Newman, 515 So.2d 548, 550-551 (La.App. 1st Cir.1987), writ denied, 581 So.2d 681 (La.1991); State v. Collins, 470 So.2d 553, 557-558 (La.App. 1st Cir.1985). Considering all of the above, we find no indication that the defendant was unable to obtain a fair trial because of this remark. Accordingly, we find no abuse of discretion in the trial court's ruling denying defendant's motion for a mistrial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER EIGHT
In this assignment of error, the defendant contends that the evidence is insufficient to support his conviction of second degree murder. Specifically, the defendant contends that the evidence warranted only a conviction of the responsive offense of manslaughter.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
LSA-R.S. 14:30.1 A.(1) provides:
Second degree murder is the killing of a human being:

*912 When the offender has a specific intent to kill or to inflict great bodily harm; ...
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). The fact that the defendant fired three shots at the victim with a pistol at a fairly close range, striking her once in the chest and once in the back, indicates a specific intent to kill or inflict great bodily harm. See LSA-R.S. 14:30.1 A.(1); State v. Price, 498 So.2d 244, 247 (La.App. 1st Cir.1986), writ denied, 503 So.2d 474 (La.1987).
LSA-R.S. 14:31 defines manslaughter as follows:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the jury. Thus, the issue remaining is whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986); State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986).
Having found the elements of second degree murder, the jury then had to determine whether or not the circumstances indicated that the crime was actually manslaughter. The guilty verdict in this case indicates that the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. The evidence in this case indicates that the defendant and the victim had an argument over their child immediately before the shooting occurred. However, the guilty verdict in this case demonstrates that the jury concluded that this argument was not sufficient provocation to deprive an average person of his self-control and cool reflection. See State v. Maddox, 522 So.2d 579, 582 (La.App. 1st Cir.1988); State v. Kennedy, 494 So.2d 550, 553 (La.App. 1st Cir.), writ denied, 495 So.2d 290 (La. 1986). Although the defendant and the victim were arguing over their child prior to the shooting, witnesses stated that they were not screaming or shouting at each other; and the argument was not characterized as "heated." Considering all of these factors, a rational trier of fact might well have concluded that the defendant acted with deliberation and reflection and not in the heat of passion at the time of the shooting. See State v. Ducksworth, 496 So.2d 624, 631 (La.App. 1st Cir.1986).
We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that defendant was guilty of second degree murder, and that the mitigatory factors were not established by a preponderance of the evidence.
This assignment of error is meritless.

PATENT SENTENCING ERROR
We note the existence of a patent sentencing error. After conviction, the defendant filed a motion for post-verdict judgment of acquittal or, in the alternative, a new trial. The trial court erred by sentencing *913 the defendant without waiting twenty-four hours after the denial of this motion. See LSA-C.Cr.P. art. 873. Although a motion for post-verdict judgment of acquittal is not listed in article 873, a twenty-four hour delay in sentencing is required after the denial of a motion for new trial. The record reflects no waiver of this time period by the defendant. Nevertheless, in State v. Augustine, 555 So.2d 1331, 1333-1335 (La.1990), the Louisiana Supreme Court implied that a failure to observe the twenty-four hour delay provided in article 873 will be considered harmless error where the defendant could not show that he suffered prejudice from the violation. See State v. White, 404 So.2d 1202 (La.1981). In Augustine, the Louisiana Supreme Court concluded that prejudice would not be found if the defendant had not challenged the sentence imposed and the twenty-four hour delay violation was merely noted on patent error review.[1] In the instant case, the defendant has not assigned as error the trial court's failure to observe the twenty-four hour delay, nor has he contested the sentence imposed. Under these circumstances, this patent sentencing error is harmless. Furthermore, the trial court lacked sentencing discretion in this case. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:30.1 B. Accordingly, any error in the trial court's failure to observe the twenty-four hour delay is harmless beyond a reasonable doubt and does not require a remand for resentencing.

CONCLUSION
For the above and foregoing reasons, we find no merit in the errors assigned by defendant herein. Accordingly, defendant's conviction and sentence are hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] See State v. Claxton, 603 So.2d 247, 250 n. 3 (La.App. 1st Cir.1992).