MADELINE JASMINE, Judge Pro Tempore.
 

 |2The defendant, Corey Lee, has appealed his convictions and sentences on two counts of armed robbery. For the reasons that follow, we affirm the convictions and sentences, and remand for correction of the commitment minute entry to have it conform with the transcript.
 

 FACTS
 

 At trial, Detective James Shook testified that he was a member of the Jefferson Parish Sheriffs Office and was assigned patrol in the first district on September 10, 2006. On that date, he was dispatched to 393 Brooklyn Avenue in response to a report of an armed robbery and auto theft. He met with the victim, Cassidy Klein. Mr. Klein described the perpetrator as being around “five nine, one forty, approximately around eighteen years of age, wearing a black outfit, a Dickies outfit.” A description of the suspect and the vehicle was given but to no avail.
 

 | oOn September 27, 2006, Detective Shook was on patrol when he received a call from #2 San Jose, which is located about a mile to a mile and a half from 393 Brooklyn Avenue. The victim, Jeffrey Trauth, stated that he had been robbed and car jacked in front of his house. Mr. Trauth described the robber as being a “black male about five ten, one sixty, fifteen to sixteen years of age. He stated he had a distinctive look to him. He said he had a round face with lines and somewhat
 
 *231
 
 bags under [h]is eyes.” Detective Shook testified that, due to his knowledge of the community, he thought of the defendant, Corey Lee, when he heard the description.
 

 Cassidy Klein, the victim in the first robbery, testified that he lived at 393 Brooklyn Avenue. On September 10, 2006, he walked out of his house to close the sunroof of his car, which was parked on the street in front of his house. He noticed the defendant was seated in a chair on the porch and thought he was a neighbor who was seeking shelter from the rain. Mr. Cassidy explained that after closing the sunroof, as he attempted to enter his house, “Mr. Lee had told me, ‘Wait. Hold up.’ And I turned around and he was pointing a revolver at me.” Mr. Klein described the gun as dark metallic and not chrome. The robber ordered him to give him his keys and, feeling that he had no choice, the victim did so. The defendant looked over his shoulder and backed up to the victim’s car, a 2000 Acura TL, which was later recovered ten blocks from Klein’s house.
 

 Mr. Klein described selecting the robber’s picture from the photographic lineup shown to him by the police. Mr. Klein stated that he was certain that Mr. Lee was the man who robbed him. On cross-examination, Mr. Klein admitted that earlier he had had some amount of doubt from looking at the photographs but after seeing the defendant in person, he had no doubt the defendant was the robber.
 

 |,¡Sergeant Dax Russo of the Robbery Division of the Jefferson Parish Sheriffs Office (JPSO) testified that he participated in the investigation of an armed robbery where Corey Lee was a suspect. He compiled a photographic array of six suspects, one of whom was Corey Lee, to show to the victim. On September 29, 2006, Mr. Klein selected Lee’s photograph from the lineup.
 

 Jeffrey Trauth, the victim of the second robbery, testified that he was at home on September 27, 2006 when a young man knocked on his door and told him that the windows were down in his car. Mr. Trauth went outside and saw two men with a bicycle, one of whom was defendant, about 30 to 40 feet from his front door. Mr. Trauth explained that he went to his car and looked it over. Mr. Trauth testified that when he began walking back to his house, the two men walked up to him. The defendant pulled a .38 revolver from his pants and brandished it in the victim’s face. Mr. Trauth testified that the defendant kept screaming and asked his friend repeatedly “Should I shoot him? Should I shoot him?” over and over. Mr. Trauth testified that he prayed aloud for God to let him live. The robber demanded, “Give it up. Give it up.” While the gun was pointed at his face, the victim surrendered his keys and the robber went to the car and drove away.
 

 Mr. Trauth testified that during this time, the man on the bike was laughing. This man said he had a gun but the victim did not believe him. Mr. Trauth got into a scuffle with this man that ended when the robber who had stolen his car came back. Mr. Trauth explained that he was scared because the gunman had returned; at that point, he released the second man and went inside of his house.
 

 Mr. Trauth testified that he reported the robbery to the police and that later he identified the gunman from a photographic lineup. In court, Jeffrey Trauth positively identified the defendant as the gunman.
 

 | aDetective Pamela Laborie, assigned to the Juvenile Division of JPSO, testified that in September 2006, Deputy Shook informed her that Corey Lee was a possible suspect in an armed robbery that took place at # 2 San Jose. Based on this infor
 
 *232
 
 mation, she compiled a photographic lineup of six similar suspects. The photographic lineup was presented to the victim, Jeffrey Trauth, who identified Mr. Lee as the robber. Detective Laborie explained that she then prepared an arrest warrant for the defendant, Corey Lee, who was subsequently arrested. She later discovered that the defendant was a suspect in another armed robbery.
 

 Detective Sergeant John Carroll testified that he interviewed the fifteen year old defendant in connection with these armed robberies. The defendant, who was accompanied by his mother, was informed of his rights and executed a written waiver of these rights. The transcript was published to the jury and the tape recording was played. In the interview, the defendant denied involvement in the robbery of Mr. Klein; he admitted being present for the robbery of Jeffery Trauth, but explained he did not commit the robbery.
 

 At the conclusion of trial, the jury found the defendant guilty of two counts of armed robbery. He was sentenced to fifteen years on each count to run consecutively. This timely appeal followed.
 

 LAW AND DISCUSSION
 

 In his first assignment of error, the defendant argues that the unapproved absence of a member of the venire, Reginald Austin, during jury selection prejudiced his trial and that his request for a mistrial should have been granted.
 

 The record shows that during the selection of the jury, Reginald Austin, a prospective juror, was called for voir dire. Although he had been present in the courtroom earlier, he was no longer in the courtroom when called for the panel. A | (¡search revealed that he was not in the hallway, the bathroom, smoking area, or jury room. Another prospective juror informed the court that Mr. Austin had left after an earlier bathroom break.
 

 After discussing the facts relating to Austin’s absence, the trial court resumed selection of the jury. The defendant moved for a mistrial “based on the fact that [Austin] has disappeared and he was allotted to be sitting on the second panel for us to question.” The
 
 trial
 
 court
 
 denied
 
 the motion and jury selection continued with the remaining venire members.
 

 The court ordered a police car to be sent to Austin’s home. Upon being brought back to court, Austin stated that he left court to go to the bathroom in his own home. The court held Austin in contempt and ordered him to remain in the back of the courtroom during the duration of the trial.
 

 Statutory provisions governing mistrial are found in LSA-C.Cr.P. art. 775, which provides as follows:
 

 A mistrial may be ordered, and in a jury case the jury dismissed, when:
 

 (1) The defendant consents thereto;
 

 (2) The jury is unable to agree upon a verdict;
 

 (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
 

 (4) The court finds that the defendant does not have the mental capacity to proceed;
 

 (5) It is physically impossible to proceed with the trial in conformity with law; or
 

 (6) False statements of a juror on voir dire prevent a fair trial.
 

 Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
 

 
 *233
 
 A mistrial shall be ordered, and in a jury ease the jury dismissed, when the state and the defendant jointly move for a mistrial.
 

 17Since a mistrial is a drastic remedy, in instances where it is not mandatory, this relief is warranted only when the defendant suffers substantial prejudice that deprived him of any reasonable expectation of a fair trial.
 
 State v. Harris,
 
 00-3459 (La.2/26/02), 812 So.2d 612, 617. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion.
 
 State v. Paul,
 
 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 352.
 

 The mere fact that ■ prospective jurors composing a petit jury venire were excused or absent does not establish fraud or irreparable injury.
 
 State v. Smith,
 
 430 So.2d 31, 37 (La.1983). A defendant in a criminal jury trial has no right to a trial by a particular jury or juror, but only to a trial by a competent, impartial jury.
 
 State v. Coleman,
 
 410 So.2d 1079, 1081 (La.1982);
 
 State v. Lemelle,
 
 353 So.2d 1312, 1315 (La.1977).
 

 Neither in the trial court nor in brief to this Court, has the defendant asserted prejudice from the denial of a mistrial. Importantly, a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused. LSA-C.Cr.P. art. 921.
 

 The defendant relies in part on the case of
 
 State v. Cass,
 
 356 So.2d 396 (La.1977) which provides that once a jury has been sworn, the defendant has a right to have his case decided by that jury. As the State points out in brief, however, Mr. Austin was never more than a prospective juror and did not serve on the defendant’s jury. The principles regarding selected jurors explained in
 
 Cass
 
 do not apply to the absence of a prospective juror.
 

 Based on the foregoing, we find that the trial court did not abuse its wide discretion in denying the defendant’s motion for a mistrial.
 

 |sIn his second assignment of error, the defendant ai-gues that his two consecutive fifteen year sentences for his armed robbery convictions are constitutionally excessive.
 

 Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered constitutionally excessive, even when it is within the statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 State v. Pearson,
 
 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 655.
 

 In reviewing a' sentence for ex-cessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice.
 
 Id.,
 
 07-332 at 15, 975 So.2d at 655-56. The trial court is afforded wide discretion in determining sentences and a court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 Id.
 

 In reviewing a trial court’s sentencing discretion, three factors will be considered on appeal: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 State v. Pearson,
 
 07-332 at 15-16, 975 So.2d at 655. Notably, age is an insuf
 
 *234
 
 ficient justification for a downward departure in a sentence.
 
 State v. Hernandez,
 
 02-892, p. 5 (La.App. 5 Cir. 1/28/03), 839 So.2d 281, 285.
 

 Sentences above the minimum for first armed robbery offenders have been upheld in this circuit. For example, in
 
 State v. Jackson,
 
 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, an eighteen year old defendant received concurrent sixty year sentences for two armed robberies. This Court upheld the sentences as within the trial court’s discretion.
 
 Id.
 
 at 14, 904 So.2d at 916. In a recent case involving |9an eighteen year old defendant,
 
 State v. Robinson,
 
 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, the defendant robbed the clerk at a convenience store at gun point. Although the defendant argued mitigating factors on appeal, this Court upheld the twenty-five year sentence as within the trial judge’s sound discretion.
 
 Id.
 
 at 869.
 

 Furthermore, the Supreme Court of Louisiana has expressly held that sentences between 35 to 50 years were acceptable for first offenders convicted of armed robbery.
 
 State v. Thomas,
 
 98-1144 (La.10/9/98), 719 So.2d 49, 50, citing
 
 State v. Nealy,
 
 450 So.2d 634, 640 (La.1984);
 
 State v. Walker,
 
 449 So.2d 474 (La.1984);
 
 State v. Dunns,
 
 441 So.2d 745, 746 (La.1983);
 
 State v. Huntsberry,
 
 439 So.2d 432, 433 (La.1983).
 

 In this appeal, the defendant argues that he was a juvenile when he committed the robberies and “no one was harmed.” As this Court has noted in the past, armed robbery is a most serious crime and should be dealt with very sternly.
 
 State v. Kennedy,
 
 93-776, p. 14 (La.App. 5 Cir. 1/25/94), 631 So.2d 1195, 1203.
 

 In
 
 State v. Butler,
 
 07-1034 (La.App. 5 Cir. 10/28/08), 997 So.2d 631, this Court upheld a twenty year sentence for a sixteen year old armed robber. The defendant in
 
 Butler,
 
 unlike the defendant in this case, did not have a juvenile record. In
 
 State v. Henderson,
 
 42,204, pp. 6-7 (La.App. 2 Cir. 5/23/07), 958 So.2d 101, 105, a twenty year armed robbery sentence, combined with a five-year firearm enhancement, was upheld, despite the defendant’s youthful age of seventeen.
 

 At sentencing, the trial judge in this case specifically noted both the defendant’s youth
 
 [1]
 
 and his extensive juvenile record, as well as his arrest record. The judge noted the seriousness of the armed robberies and the fact that one of the victims thought he was going to die. The judge stated that he had considered the 1 ^sentencing guidelines and found that any other sentence would deprecate from the seriousness of the crime.
 

 In his brief to this Court, the defendant suggested that the imposition of consecutive sentences was vindictive in light of the fact that the defendant was offered concurrent sentences if he pled guilty. This Court in
 
 State v. Aleman,
 
 01-743, pp. 12-13 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1066,
 
 writ denied,
 
 2002-0481 (La.3/14/03), 839 So.2d 26, addressed questions of vindictiveness in sentencing, despite the defendant’s failure to raise the issue before the trial court.
 

 The Supreme Court of the United States has observed:
 

 To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort,
 
 see North Carolina v. Pearce, supra,
 
 395 U.S., [711] at 738, 89 S.Ct., [2072] at 2082[, 23 L.Ed.2d 656 (1969) ] (opinion of Black, J.), and for an agent of the State to pursue a course of action
 
 *235
 
 whose objective is to penalize a person’s reliance on his legal rights is “patently unconstitutional.”
 
 Chaffin v. Stynchcombe, supra,
 
 412 U.S., [17] at 32-33, n. 20, 93 S.Ct., [1977] at 1986[, 36 L.Ed.2d 714 (1973) ].
 
 See United States v. Jackson,
 
 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138. But in the “give-and-take” of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution’s offer.
 

 Bordenkircher v. Hayes,
 
 434 U.S. 357, 363-364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).
 

 In
 
 State v. Henderson,
 
 94-286, p. 6 (La.App. 5 Cir. 12/14/94), 648 So.2d 974, 978, this Court, citing
 
 Bordenkircher,
 
 rejected the defendant’s claim that his sentence was vindictive. The defendant in
 
 Henderson
 
 rejected a plea bargain of a six and a half year sentence, went to trial, and received an eighteen year sentence following conviction. This Court concluded that the defendant’s sentence was not vindictive, because the “defendant chose not to accept the plea bargains offered by the State, thereby taking the risk of a greater penalty upon conviction by a jury.”
 
 Id.
 

 |nIn this case, the defendant chose not to accept a plea bargain. Furthermore, as the State notes in brief, during the trial the court heard the testimony of both victims in great detail, thus making the judge aware of the severity of the armed robberies. The State also notes that the court took into account the extensive arrests and juvenile record of the defendant. For these reasons, we find that the sentences imposed in this case were not vindictive.
 

 The Louisiana Supreme Court has stated that, “[o]n review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.”
 
 State v. Williams,
 
 03-3514, p. 14 (La.12/13/04), 893 So.2d 7, 17. In light of the trial court’s wide discretion in sentencing, as discussed in
 
 Pearson, supra,
 
 and in light of the abundance of case law in which armed robbery sentences of twenty-five years were upheld, we find the defendant’s sentences are not constitutionally excessive.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 The commitment order provides that the defendant was found guilty of two counts of armed robbery and that he was sentenced to fifteen years on each count, sentences to run consecutively. The sentencing transcript reveals the following:
 

 The Court: On Count 1, Armed Robbery, I’m going to sentence you to fifteen years at hard labor. And that’s pursuant to, what is it, 64.4? No. What’s the one with the additional for the handgun?
 

 Ms. Gorman: I believe it’s 64.3, your Honor.
 

 The Court: 64.3. I’m looking at it. That adds another five years. It’s fifteen years at hard labor, without benefit of parole, | ^probation, or suspension of sentence, credit for time served. On Count Number 2, I’m going to sentence you to fifteen years at hard labor, without benefit of parole, probation, because it was a handgun also, without benefit of parole, probation or suspension of sentence, and order that, because these two were individual events happening on different days, order that they run consecutive to each other.
 

 
 *236
 
 The commitment minute entry is inconsistent with the sentence as imposed by the trial court. The commitment minute entry reflects that the trial judge sentenced the defendant for two armed robbery convictions to fifteen years of imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The commitment minute entry fails to indicate that any portion of the sentences was imposed for the violation of LSA-R.S. 14:64.3. Pursuant to the firearm enhancement statute, the defendant was subject to an additional period of incarceration as follows:
 

 When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
 

 LSA-R.S. 14:64.3(A).
 

 In this case, the State listed the enhancement statute in the bill of information. At sentencing, the trial judge specifically stated that he was imposing an additional period of incarceration for use of a firearm in each armed robbery. The commitment minute entry fails to reflect this sentence accurately. It is well settled that where there is a discrepancy between the minute entry and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 In light of the discrepancies between the commitment minute entry and the transcript, we remand this matter for the trial court to order that the commitment | 13minute entry be amended to reflect the sentence as imposed by the court.
 
 State v. Allen,
 
 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 881.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s convictions and sentences are affirmed. This matter is remanded to the trial court for the limited purpose of correcting the commitment minute entry to conform to the transcript.
 

 CONVICTIONS AND SENTENCES AFFIRMED; MATTER REMANDED.
 

 [1]
 

 . The bill of information cites the defendant’s date of birth as February 1, 1991, making him fifteen years old at the time of the two armed robberies at issue in this appeal.