JUDE G. GRAVOIS, Judge.
| aThe defendant, Andrei Johnson, has appealed the sentences imposed for his convictions of three counts of first degree robbery in violation of LSA-R.S. 14:64.1. After being found guilty by a 12-person jury, the trial judge sentenced the defendant to 30 years imprisonment on each count, with the sentences on counts two and three to run consecutively, resulting in a total sentence of 60 years. For the reasons that follow, we affirm the sentences and remand with instructions for correction of the commitment.

FACTS

At trial, Ronald Harris testified that on the evening of December 15, 2008, he answered a knock on the door of his apart *1118 ment and was met by a man who asked for a woman named Joyce. Mr. Harris informed this individual that no one named Joyce lived there. A few minutes later, the same man knocked again, and when Mr. Harris answered the door, a second man, later identified as the defendant, placed a gun in his face and pushed him back inside the apartment. Three men, including the defendant who was armed, entered the apartment. The man who originally knocked at the door did not. After bringing Mr. Harris Rupstairs, the three subjects took Mr. Harris’ wallet and money clip, containing money, from his pants pocket. One of the subjects inside the residence took Mr. Harris’ ATM card from his wallet, obtained his PIN number from him, left the residence for approximately forty minutes, and withdrew money from his bank account. The other two subjects, one being the defendant, remained in the residence and took other items belonging to Mr. Harris. Mr. Harris testified that when the third subject returned from the ATM with $200, the three subjects began arguing over how to split the money. The defendant claimed that he should receive the extra money because he had planned the robbery; another of the subjects claimed that he should get the additional money because he had gone to the ATM and obtained it. Mr. Harris testified that the subjects reminded him that “New Orleans was the murder capital of the U.S.” He took this as an implied threat. After receiving some of the money that had been withdrawn from the ATM, the defendant stated: “Now we’re gangsters.” Mr. Harris stated that the perpetrators told him to sit on the stairs and not call the police while they left. A short time later, Mr. Harris called the police. Neighbors reported seeing the four men escape in a white Cadillac Esca-lade.
Mr. Wayne Barber and his girlfriend, Jolie St. Germain, who were the victims of the second robbery, also testified at the trial. They testified that shortly after returning home on the evening of December 19, 2008, their lights suddenly went out. Mr. Barber then went outside to check on the power. While outside, Mr. Barber was approached by two unknown black males who were armed with guns and wearing bandanas covering their faces. The men attempted to force Mr. Barber back inside; however, he refused and began to run down the street in an attempt to lure the men away from the house. Eventually, the men backed off and made their way into the house. Mr. Barber went to a neighbor’s house for help.
|4Ms. St. Germain testified that the lights came back on. She walked into the bedroom and was met by an armed black male who demanded money from her. She then went into the kitchen to get her purse where she observed two additional black males, who were also armed. The gunman with Ms. St. Germain took her purse and threw it to one of the other men and directed Ms. St. Germain to return to the bedroom where he pushed her face down on the bed and nudged up against her. Suddenly, the gunman became startled, backed away, and left the room. Ms. St. Germain locked the door and escaped through a window in the bedroom.
Mr. Barber observed three men run out of the house and drive away in a white Escalade. Ms. St. Germain’s purse, along with Mr. Barber’s wallet and watch, were taken in the robbery.
Testimony from the investigating officers indicated that they suspected that the two incidents might be related because the suspects in both cases were described as four black males, traveling in a white Cadillac Escalade. A white Escalade was stopped minutes after the December 19, 2008 robbery. The defendant was seated in the front passenger’s seat of the Esca- *1119 lade. The other suspects were also in the Escalade. Items belonging to Mr. Barber were recovered from them. Before the vehicle was stopped, officers observed unknown, dark items and papers being discarded out of the window of the Escalade.
Deputy Daniel Lincoln of the Jefferson Parish Sheriffs Office testified that he participated in the stop of the vehicle. He took custody of the defendant, and, after performing a search for officer safety, recovered a man’s watch from the defendant’s pocket. When questioned as to why the watch was not on his wrist, the defendant stated that it did not belong to him. After canvassing the scene with another deputy, a pair of brown gloves and receipts from Ms. St. Germain’s purse were discovered and placed into evidence.
|5The defendant was taken to the detective’s bureau, was advised of his rights, and gave a statement to Terry Graffeo, who was a detective for the Jefferson Parish Sheriffs Office at the time of the incident. In his statement to Detective Graf-feo, the defendant admitted to being on the scene,[1] but denied knowledge or involvement of the robbery. The defendant claimed that after leaving the scene, one of the other perpetrators threw a watch to him just before they were stopped by police.
The vehicle was towed, a search warrant was obtained and executed, and some of the missing items belonging to Mr. Harris, including his Crossman .357 replica pellet gun, were recovered inside of the vehicle. A bandana, a C02 cartridge, and a box of Crossman pellets were also recovered from inside of the vehicle.
In response to a court order, Chase Bank provided surveillance footage of the suspects withdrawing money from Mr. Harris’ account. Chase Bank also provided Mr. Harris’ bank account records, which reflected that a $200 withdrawal was made on December 15 at approximately 10:30 p.m. Mr. Harris and Ms. St. Ger-main identified the defendant in a photographic lineup.
Reverend Rodney S. Lemon, Sr. testified for the defense. He stated that the defendant had been a member of his church for fourteen years. At the time of. the robberies, the defendant was in college. He had received a full football scholarship to the University of Arkansas at Monticello. Rev. Lemon testified that the defendant had a good reputation and was recognized in the community for his athletic accomplishments in football. On cross-examination, Rev. Lemon admitted that the defendant’s family was not poor, they wore nice clothes and drove decent cars, one being the Cadillac Escalade.
1 «ASSIGNMENTS OF ERROR

The trial court erred in denying the motion to reconsider sentence.

The sentence is constitutionally excessive.

Because the defendant’s two assignments of error are substantially similar, they will be discussed together.
The defendant argues that the trial court erred in denying his motion to reconsider sentence as the sentence was constitutionally excessive because it was imposed without support from the record or the benefit of a pre-sentence investigation.[2] *1120 He claims that the trial court failed to properly consider the mitigating factors as required by LSA-C.Cr.P. art. 894.1. He further argues that there was no justification for imposing consecutive sentences on counts two and three because they arose out of the same act or transaction. The defendant argues that concurrent sentences are ordinarily imposed upon offenders without a felony record, especially where the convictions arise out of the same course of conduct within a relatively short period. The defendant concludes that the sentence imposed shocks the sense of justice and is nothing more than a needless infliction of pain and suffering.
The State responds that the trial court properly denied the defendant’s motion to reconsider sentence because the sentence was not constitutionally excessive. The State argues that the defendant is limited to a constitutional excessiveness claim because his motion to reconsider sentence lacks specificity. It further argues that the trial court gave proper weight to the aggravating and mitigating circumstances before sentencing the defendant and that comparable |7sentences have been upheld under similar circumstances. The State concludes that the trial court did not abuse its sentencing discretion, thus the defendant’s claims have no merit.
Under LSA-C.Cr.P. art. 881.1, a defendant must either move for reconsideration of his sentence at the time of sentencing orally, or file a written motion to reconsider his sentence setting forth the specific grounds upon which the motion is based. The failure to state the specific grounds upon which the motion is based precludes the defendant from raising the issue on appeal. State v. Schieffler, 02-1047, p. 4 (La.App. 5 Cir. 2/25/03), 841 So.2d 1000, 1002, writ denied, 03-0741 (La.9/19/03), 853 So.2d 636 (citation omitted). Such a failure limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Carter, 07-270, 10 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, 203.
In the present case, defense counsel orally objected to the sentence by stating, “... at this time, we would note our objection to the verdict, as well as the sentence ... ”. In his written motion for reconsideration of sentence, the defendant argued that his 60-year sentence was excessive and the trial court should reconsider the sentence to afford the defendant the benefit of LSA-C.Cr.P. art. 893(E), which would allow the defendant’s sentences to be suspended and the defendant to be placed on probation.[3] During the hearing on the defendant’s motion to reconsider sentence, the defendant argued that the sentence was excessive because he was offered a 30-year plea deal for three counts of armed robbery; however, he was convicted of the lesser verdicts of first degree robbery and yet received a 60-year sentence, which was double the plea offer. The ^defendant did not specifically raise the issues regarding the trial court’s noncompliance with the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1 or the consecutive nature of the sentences in either his oral objection, his written motion for reconsideration of sentence, or in his oral argument on the motion for reconsideration of the sentence.
*1121 At the hearing on the motion to reconsider, the defense attorney stated that the trial court imposed “30 years on each count and ran it consecutive, such that the total sentence would be 60 years.” This statement was a reiteration of the sentence imposed at the sentencing hearing rather than a specific objection to the consecutive nature of the sentence. Moreover, defense counsel proceeded to argue only the issue involving the disparity in the sentence and the original plea offer made to the defendant. Therefore, the issue of consecutive sentences was not specifically preserved for review.
Nevertheless, this issue is meritless. LSA-C.Cr.P. art. 883 provides: “If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently.... Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently ... In State v. Hymes, 04-320, p. 10 (La.App. 5 Cir. 10/12/04), 886 So.2d 1157, 1163, writ denied, 04-3102 (La.4/1/05), 897 So.2d 599, this Court upheld consecutive sentences where the defendant was convicted of nine offenses, two counts of attempted first degree robbery and seven counts of first degree robbery, which occurred on six separate days over a two-week period. This Court opined that the consecutive sentences were justified because of the separate and distinct nature of the acts, and because of the seriousness of the offenses. Id. Likewise, the instant offenses were separate and distinct, involving 13different locations and victims, and the offenses were quite serious and disturbing as noted by the trial court. Thus, even if the issue of consecutive sentences had been preserved for appellate review, the defendant would not be entitled to relief.
The defendant is entitled to review of his sentence for constitutional ex-cessiveness. The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v. Nguyen, 06-969, p. 5 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. Nguyen, 06-969 at 5-6, 958 So.2d at 64. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. Schieffler, 02-1047 at 5, 841 So.2d at 1003. The court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. LSA-C.Cr.P. 881.4(D).
In reviewing a sentence for ex-cessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice, while recognizing the trial court’s wide discretion. Nguyen, 06-969 at 6, 958 So.2d at 64. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 880 (citation omitted).
In the present case, the defendant was convicted of three counts of first degree robbery. As such, he was subjected to a sentencing range from three to forty years without benefits for each count. LSA-R.S. 14:64.1. Therefore, the Immaximum sentencing exposure was 120 years, with *1122 out benefits. The defendant received a 30-year sentence on each count, with the sentence on counts two and three to run consecutively, resulting in a total sentence of 60 years, which was half of the possible maximum sentence and was within the sentencing limits prescribed by the statute.
The record reflects that the trial court carefully considered the gravity of the offenses and the nature and background of the offender. At the sentencing hearing, the defendant’s mother testified that at the time of these offenses, the defendant was a freshmen in college on a football scholarship, a “good kid,” and had never been arrested. The defendant addressed the court and requested leniency asserting that his acts were out of his character and he was a first-time offender requesting a second chance. Defense counsel also argued that it was the defendant’s first offense and the 60-year sentence the court was intent on imposing seemed excessive in that no one was hurt.
In sentencing the defendant, the trial court stated:
... I have to go off what facts I hear. Okay. And the facts that I heard in this case, were very disturbing. They involved two home invasions. And for the life of me, I can’t think of any situation, to put anybody at risk, and for the person that doesn’t know that it’s not an actual handgun, that it’s a fake pellet gun, that’s not any comfort to the three people that got robbed....
... I am just saying all of the factors that go into a sentence ... that you have somebody knock on a door, the individual opens the door, you ask if an individual is there, he says, no, he closes the door; ten minutes later, you knock on the door, this time he is asked a question and answers it, and somebody puts a gun to his head. And then you bring them inside, and then the individual has his ATM card taken.... And when they came about to divide the money, your client said that he was the mastermind and should deserve the large share of that.
... [T]he troubling nature of this is that when they go to leave, and he is told, Don’t tell, because you do realize New Orleans is the murder capítol [sic] of the world, and the fact that they glorify each other because they’re gangsters now....
|n... We don’t even have to get to the next house; in which ... two individuals come home from spending the night out.... The guy goes out — now this is the worst I could imagine ... the lights go out, and the first thing you do is go, Which circuit did I trip? [sic], and walk outside, and somebody walks up to you with a gun. You’ve been lured outside the safety of your house, to have a gun put to your head; then you don’t know if you’re going to die at that point or not, so you’re trying to get away; and other people go inside the house, and you know your girlfriend’s inside the house; there’s nothing you can do to help her. They go inside grab the girl, lead her to different areas taking things. Now I can’t think of anything worse than those two scenarios I just presented....
... [A]nd it wasn’t a murder. Thank, God, it wasn’t a murder....
... The only thing that was said [about the defendant] was that he was a great athlete. And I can appreciate that.... That’s a lot of hard work, too.
... I’m not sentencing him to the maximum. I am sentencing him to a middle range of that offense; because as I’ve stated, I’m greatly disturbed how someone could plan these things, and be bragging about being a gangster ... that ... disturbs me.
... And under the Code of Criminal Procedure, Article 894.1 of the sentenc- *1123 mg guidelines, that I considered that when a defendant has been convicted of a felony, which he has, the Court should impose a sentence of imprisonment if any of the following occurs: there is an undue risk that during a period of suspended sentence or probation, the defendant will commit another crime; the defendant is in need of a correctional treatment or custodial environment that can be provided most effectively by his commitment to an institution; any lesser sentence would deprecate the seriousness of the offense; and under B, the offender conducted — the conduct during the commission of the offense manifests deliberate cruelty to the victim, and ... under B-13, the offender was the leader....
... In my opinion, this man was the leader; so I will leave it at that.
In denying the defendant’s motion for reconsideration of sentence, the trial court reiterated that the nature of the offenses was troubling and maintained that it was relying on all of the reasons given at the original sentencing.
Clearly, as demonstrated by the trial judge’s statements, the trial court carefully considered the gravity of the offenses, the defendant’s background, and the relevant factors of LSA-C.Cr.P. art. 894.1 in this case.
| |2The defendant maintains that the sentence is excessive given that he is a young, first-time offender, and no one was hurt. This argument is meritless because a defendant’s youth, by itself, is an insufficient basis to depart from the sentencing scheme set by the legislature. State v. Robinson, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 868, writ denied, 08-1086 (La.12/19/08), 996 So.2d 1132.
The defendant also contends that the sentence was punitive in light that the defendant was offered a single concurrent 30-year sentence for the greater offenses of armed robbery. This Court, however, has recognized that when a defendant chooses not to accept the plea bargains offered by the State, he takes the risk of a greater penalty upon a jury conviction. State v. Lee, 09-37, p. 10 (La.App. 5 Cir. 5/12/09), 15 So.3d 229, 235 (citation omitted). Particularly, the risk of penalty becomes greater upon jury conviction because the court has the benefit of witness testimony, allowing it to more fully consider the severity of the offense. Id. As the trial court stated during the sentencing hearing and the hearing on the motion to reconsider sentence after trial, it had the benefit of witness testimony that made it aware of the disturbing nature of the facts in the case.
Further, the sentences imposed are supported by comparison. In State v. Mitchell, 35,970, p. 1 (La.App. 2 Cir. 5/8/02), 818 So.2d 807, 810, the 16-year-old defendant was charged with armed robbery, convicted of the lesser charge of first degree robbery, and sentenced to 30 years. The trial court noted that it felt that armed robbery had been proved, but the jury made a compromise verdict. Mitchell, 35,970 at 17-18, 818 So.2d at 811. The appellate court upheld the sentence notwithstanding that it was defendant’s first offense and he was young, 11snoting the cruelty of the offense to the victims, and the involvement of juveniles. Mitchell, 35,970 at 19, 818 So.2d 807 at 819.[4]
*1124 Similarly, in this case, the trial court considered the defendant’s youth, criminal background, and personal history, as well as the nature and cruelty of the offense when sentencing the defendant. The trial court implied that the crime of armed robbery had been proved, but the jury convicted on the lesser verdict due to the additional firearm charge, which had not been proven. It is also noted, by the defendant’s own admission, that his 15-year-old brother was also involved in the offenses.
Therefore, in light of the nature and gravity of the offenses, given the defendant’s age and background, we find that the trial court did not abuse its broad discretion in sentencing the defendant. Accordingly, the trial court did not err in denying the defendant’s motion to reconsider the sentences.
These assignments of error are without merit.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record indicates that the trial court failed to observe the 24-hour delay between denying the defendant’s motions for a new trial and sentencing, as required by LSA-C.Cr.P. art. 873. The trial court also failed to observe the 24-hour delay between the ruling on the post-judgment verdict of acquittal and [ ^sentencing. Although the Article does not explicitly require a 24-hour delay in sentencing after a motion for a post-verdict judgment of acquittal has been denied, this Court has applied the 24-hour delay in Article 873 to motions for post-verdict judgment of acquittal. State v. Nicholas, 10-866, p. 10 (La.App. 5 Cir. 5/24/11), 67 So.3d 610, 617.[5]
In State v. James, 527 So.2d 504, 505 (La.App. 5 Cir.1988), this Court held that the delays were waived when counsel affirmatively responded to the trial court that the defendant was ready for sentencing. Also, in State v. Green, 04-357, p. 10 (La.App. 5 Cir. 11/16/04), 890 So.2d 6, 12, this Court found a valid waiver of delays, even though defense counsel did not expressly state that the defendant was ready for sentencing, because he agreed with the trial court that the defendant needed to be sentenced.
The record in this case indicates that at the beginning of the sentencing hearing on October 30, 2009, defense counsel acknowledged that the matter was set for sentencing and informed the trial court of the outstanding motions for new trial and for post-verdict judgment of acquittal. After both motions were denied, defense counsel stated: “Your Honor, those motions being concluded and decided upon and objected to at this time, the matter would be now present for sentencing. Judge, I would request to take testimony of Mr. Johnson’s parents, as well as Mr. Johnson himself.” The trial court allowed *1125 the testimony, and arguments from defense counsel before he sentenced the defendant. We find these actions constituted a waiver of the required delays.
Further, in State v. Wilson, 99-105, p. 6 (La.App. 5 Cir. 7/27/99), 742 So.2d 957, 960, writ denied, 99-2583 (La.2/11/00), 754 So.2d 935, the defendant did not object at sentencing or raise the trial judge’s failure to observe the delay as error, yet he specifically challenged the sentence as excessive. This Court found under the particular circumstances of the case, that failure to waive the delays was harmless because the case was on remand for re-sentencing, the defendant did not object at re-sentencing, and the trial court had already reconsidered the defendant’s sentences at a hearing on a motion to reconsider the sentence. Id. The court further found that, under the particular circumstances, remand would be a useless formality. Id.
Similarly, in the instant case, the defendant did not object at sentencing or raise the trial judge’s failure to observe the delay as error; however, he did object to the sentence as excessive. The trial court also reconsidered the defendant’s sentences at the hearing on the motion to reconsider sentence. Accordingly, even if we were to find that the defendant did not waive the delay, our review indicates that the defendant was not prejudiced by the trial court’s failure to observe the delays and remand would be a useless formality.
Also, the commitment reflects that the defendant is to serve a term of 30 years at hard labor, giving credit for time served; however, the transcript is silent in reference to hard labor and credit for time served. In addition, the transcript reflects that the trial court imposed a term of 30 years on each count, with counts two and three to run consecutively, for a total prison term of 60 years. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, this matter is remanded to the trial court for correction of the commitment; the trial court is ordered to make the entries in the minutes reflecting the change and direct the clerk |,fiof court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced and to the Legal Department of the Louisiana Department of Corrections. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
The record also reflects that the trial court failed to impose defendant’s sentence at hard labor as required by LSA R.S. 14:64.1.[6] However, because the statute mandates hard labor and there is no discretion allowed, the failure by the trial judge to state that the sentence is to be served at hard labor is harmless error and no correction is required. State v. Horton, 09-250, p. 11 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 377.
In addition, receiving credit for time served is self-operating, pursuant to LSA-C.Cr.P. art. 880. State v. Johnson, 05-180, pp. 10-11 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 582, writ denied, 06-1254 (La.12/15/06), 944 So.2d 1282. As the commitment already reflects that the defendant was sentenced, giving him credit for time served, corrective action is needless.

CONCLUSION

The defendant’s sentences are affirmed. This matter is remanded for the limited *1126 purpose of correcting the commitment as ordered above.

SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS

. The defendant stated that his 15-year-old brother, Joshua Johnson, his 20-year-old step-brother, Floyd Grant, and Nicholas Howard were also with him.

. As the State points out, a pre-sentence investigation report is merely an aid to the court and not a right to the accused. State v. Robinson, 07-832, p. 19 (La.App. 5 Cir.4/15/08), 984 So.2d 856, 869, writ denied, 08-1086 (La.12/19/08), 996 So.2d 1132.

. Although defendant maintains that his sentences are excessive, he does not argue on appeal that the sentences should be suspended under LSA-C.Cr.P. art. 893(E). Nevertheless, this issue is meritless because imposition of a suspended sentence pursuant to LSA-C.Cr.P. art. 893(E) is prohibited when the offense is defined as a crime of violence as is first degree robbery. See LSA-R.S. 14:2(B)(22). Furthermore, the benefits of suspension and probation are restricted for the entirety of the sentence pursuant to the statute. LSA-R.S. 14:64.1.

. See also, State v. Tucker, 591 So.2d 1208, 1218-19 (La.App. 2 Cir.1991), writ denied, 594 So.2d 1317 (La.1992), where the appellate court upheld the imposition of a 30-year sentence for first degree robbery, and two 45-year sentences for armed robbery, which were imposed consecutively and was at mid-range compared to the ultimate sentencing exposure; State v. Wallace, 522 So.2d 1184 (La.App. 4 Cir.1988), where the appellate *1124 court upheld a 40-year sentence for a first time offender convicted of first degree robbery in conjunction with a concurrent 30-year sentence for an attempted second degree murder conviction.

. In Nicholas, supra, this Court noted a split in the circuits on this issue. The First Circuit, in State v. Dixon, 620 So.2d 904 (La.App. 1 Cir.1993), is in accord with this Court in finding that a motion for post-verdict judgment of acquittal is included in LSA-C.Cr.P. art. 873. Id. However the Second and Fourth Circuits, in State v. Harris, 42,376 (La.App. 2 Cir. 9/26/07), 966 So.2d 773, writ denied, 07-2109 (La.3/28/08), 978 So.2d 304, and State v. Robinson, 10-0885 (La.App. 4 Cir. 12/21/10), 54 So.3d 1208, disagree and find that LSA-C.Cr.P. art. 873 does not apply to a motion for post-verdict judgment of acquittal.

. LSA-R.S. 14:64.1(B) states: "Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence."