886 So.2d 1157 (2004)
STATE of Louisiana
v.
Alexander HYMES, Jr.
No. 04-KA-320.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 2004.
*1158 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Assistant District Attorney, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On August 30, 2000, the Jefferson Parish District Attorney filed a nine-count bill of information charging defendant, Alexander Hymes, with attempted first degree robbery in counts one and two; and with first degree robbery in counts three through nine. He was tried by a twelve-person jury on May 22-24, 2001. The jury found defendant guilty of attempted simple robbery on count one; guilty of simple robbery on count seven, and guilty as charged on all remaining counts. Defendant *1159 subsequently filed a motion for new trial.
On May 31, 2001, the trial court denied defendant's new trial motion. Defendant waived statutory delays, and the trial judge sentenced defendant to three years at hard labor on count one; ten years at hard labor on count two; twenty years at hard labor on counts three through six and counts eight and nine; and five years on count seven. The judge ordered that the sentences run consecutively to each other, for a total term of imprisonment of 138 years. The state filed a habitual offender bill, which it later decided to nolle prosequi. Defendant filed a Motion to Reconsider Sentence.
Defendant filed an appeal in this Court, seeking only a review of his sentences for excessiveness. Upon finding that the district court had failed to rule on defendant's Motion to Reconsider Sentence, this Court dismissed the appeal and remanded to the trial court for a ruling on the motion. This Court further ordered that defendant re-lodge his appeal within sixty days of the date of the district court's ruling on the Motion to Reconsider Sentence. State v. Hymes, 02-836 (La.App. 5 Cir. 12/30/02), 836 So.2d 648.
On January 27, 2003, the district court heard arguments on the Motion to Reconsider Sentence, and denied it. No written motion for appeal is found in the record, but it appears that defendant made an oral motion for appeal.

FACTS
The following facts and testimony were elicited at trial.
Nicole Courouleau testified that, on July 15, 2000, she was employed at Tru-Value Hardware at 6409 Airline in Metairie. Defendant, Alexander Hymes, entered the store and asked her to direct him to the plumbing tubing. Courouleau showed him where the plumbing merchandise was, and then she went to the store's cash register to ring up defendant's purchase. Defendant put his hand under his shirt and told her he had a gun. He ordered her to open the cash register or he would shoot her. Courouleau testified that she gave defendant money from the register because she believed he had a weapon, and she feared for her life. When defendant left the store, she called police. Courouleau testified that she identified defendant in a photographic lineup as the man who robbed her. She also identified defendant in court.
Lisa Polizzi testified that, on July 22, 2000, she was working at Adele's Shoppers Mart at 6601 Veterans Boulevard in Metairie. Her grandmother, the store's owner, was also working there that day. Defendant entered the store and showed interest in a particular item. Polizzi took the item off the rack and told him the price. Defendant then said, "This is a robbery. Give me what's in the register and I won't hurt you." Defendant held his hand inside the waistband of his pants. Polizzi testified she believed he had a weapon. She gave him $150 from the cash register. Defendant left the store, and Polizzi and her grandmother notified police. Polizzi identified defendant as the robber in a photographic lineup, and later identified him in court.
On July 24, 2000, Lola Julien was working as a cashier at Piccadilly Cafeteria on Veterans Boulevard in Metairie. She saw defendant eating in the restaurant's dining area. Defendant later approached her as if he intended to pay for his meal. He told Julien, "I don't want you to scream. I don't want you to ring any bells. I need your money." Julien testified that defendant did not say he had a gun, but she thought he had one, because he held his *1160 hand at his waist, and his shirt was loose-fitting. Julien gave defendant between $140 and $260 from the cash register. Defendant then left the restaurant.
Julien told a customer that she had been robbed. The man followed defendant out the door of the restaurant and watched him go to his truck. The customer called police on his cellular telephone and described the truck. Julien identified defendant in a photographic lineup, and at trial as the man who robbed her.
Rainna Lagnes was employed at C.C.'s Coffee House on Veterans Boulevard in Metairie on the night of July 25, 2000. Defendant entered and ordered a drink. She prepared his order. Defendant then told her he had a gun, and he wanted all the money in the cash register. Lagnes testified that she believed defendant had a gun, because he put his hand under his shirt. Defendant also told her he would shoot her if she screamed. Lagnes gave defendant $900 from the cash register. Defendant then left the coffee shop. Lagnes identified defendant in a photographic lineup. She also identified him at trial.
Masooda Khan operates Fashion Arcade, a clothing store on Veterans Boulevard in Metairie. She testified that she was working there on August 1, 2000, when defendant entered and told her he wanted to buy a sweater for his girlfriend. Khan told defendant she did not have any sweaters in stock, as it was summertime. Defendant told her, "I have a gun, lady. Open your cash register. Give me all the money." Khan testified that defendant's hands were in his pockets. She did not see a gun, but she could see the shape of an object pointing toward her. Khan did not give defendant any money. She told him to leave, and he ran out of the store. Khan called police four days later to report the incident. She identified defendant in a photographic lineup, and in court.
Sherry Luquette testified that, on August 1, 2000, she was working as the manager of Russell Stover Candies on Veterans Boulevard in Metairie. A man entered the store, picked up a bag of candy, and placed it on the counter as if to make a purchase. Luquette rang up the purchase on the cash register and gave the man the total price. He reached into his pants and said, "I have a gun, give me the money." Luquette reached into the cash drawer, and the man told her, "Just don't cause any trouble." He then said, "Hand it to me." Luquette gave him about $200, and he left the store.
Luquette told her co-worker she had been robbed, and asked her to call police. She then went next door to Red Wing Shoes and told Billy Hingle, a customer there, that she had been robbed. Hingle testified that Luquette pointed out the robber, who was by then walking away through the parking lot. Hingle watched the man get into a mauve or purplish pickup truck with a "V" in the license number. Hingle testified that the truck pictured in State's Exhibits 4 and 5 was the one he saw. He noted that the truck in the photographs had a license plate with a "V" on it. Hingle was not able to identify the robber, as he did not get a good look at the man's face.
Donna Rasch owns and operates a Hallmark greeting card shop on South Clearview Parkway in Harahan. On August 2, 2000, defendant entered her store, selected a card, and threw it on the checkout counter. She rang up the card and told him the charge was fifty-four cents. Defendant told her, "Open the register and give me what you have in there." Rasch testified that defendant seemed to be holding something in his hand, although she could *1161 not see what it was. She believed defendant had a weapon.
Rasch told defendant she could not get the cash register to open. Defendant said, "Give me what was in the register. Don't make me do something we'll both be sorry for." Defendant continued to threaten Rasch and demand that she open the cash register. Rasch did not ultimately give defendant any money. He took the greeting card and left the store. Rasch testified that she saw defendant get into a maroon-ish purple pickup truck.
Rasch reported the incident to police. While officers were interviewing her at the Hallmark store, they received word that a man meeting the robber's description had been apprehended. The officers transported her to a Burger King restaurant on Veterans Boulevard in Metairie, where she identified defendant as the robber. She also identified defendant in court.
Marta Gato owns and operates Golden Touch Florist on Veterans Boulevard in Metairie. Gato was working with an employee, Jennifer Fahrenholtz, on August 2, 2000, when defendant entered the shop. Fahrenholtz testified that she asked defendant whether he needed assistance. He asked her where the cash register was, and she told him it was in the back of the store. Defendant grabbed her arm and walked her toward the back of the shop. Fahrenholtz testified that defendant implied he had a gun by placing his hand in his pants.
Gato testified that she saw defendant take Fahrenholtz's arm. She noted that defendant's hand was in his pants. She asked him whether he needed to find the bathroom. Defendant said, "No, I want your money. I have a gun." Gato told defendant she did not have much cash. He replied, "That's fine. Give me what you have." She gave defendant fifty or sixty dollars. Gato testified that defendant told her not to try to go after him. He then left the store. She saw him leave in a purple truck. She identified State's Exhibits 4 and 5 as photographs of defendant's truck.
Gato testified that a police officer arrived at the store one-half hour after the robbery. He drove Gato to a nearby Burger King parking lot. She saw defendant there, inside a police car. She identified him as the robber. She also saw defendant's truck at Burger King. Fahrenholtz testified that she identified defendant in a photographic lineup. Gato and Fahrenholtz both identified him at trial as the robber.
Deputy Louis Berard of the Jefferson Parish Sheriff's Office testified that he heard a robbery call broadcast over police radio. He saw defendant driving on Veterans, and both defendant and his truck met the broadcast descriptions. Berard followed the truck, and turned on his overhead lights. Defendant pulled into a Burger King parking lot in the 3900 block of Veterans. The officer followed. Berard ordered defendant to get out of his truck, and defendant complied. Berard testified that he held defendant until a robbery detective arrived.
Berard did not question defendant. He testified that defendant spontaneously stated, "You can't charge me with armed robbery `cause I didn't have no gun. All you can charge me with is second degree robbery."
Detective William Jones of the robbery division testified that he was present when Sergeant Picone, his supervisor, presented defendant with a consent to search form. Defendant completed the form, consenting to a search of his truck. Detective Danny O'Neil searched the truck and recovered a Hallmark store bag and greeting card from the vehicle's front seat.
*1162 Detective John Carroll testified that he was at the scene of defendant's arrest. He later advised defendant of his Miranda[1] rights at the investigations bureau. Carroll conducted three tape-recorded interviews with defendant. The detective testified that defendant lied to him in the first two interviews. In the third interview, defendant admitted to the offenses at Tru-Value Hardware (count three), Adele's (count four), Piccadilly (count five), C.C.' s Coffee House (count six), Tiffin Inn (count one),[2] Russell Stover Candies (count nine), Hallmark, Golden Touch Florist (count eight), and Hallmark (count seven). That tape recording was entered in evidence, and was played for the jury. A transcript of the statement was also entered in evidence.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court erred in sentencing him without considering mitigating circumstances under the provisions of LSA-C.Cr.P. art. 894.1. Defendant further contends that the trial court erred in ordering that his sentences be served consecutively to each other. He argues that, because he is fifty-two years old, his total prison term of 138 years amounts to a life sentence. He asserts that his sentences constitute cruel and unusual punishment.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Tracy, 02-0227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and the background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. State v. Tracy, supra. The trial judge has wide discretion in imposing sentences within the statutory limits, and a sentence will not be set aside if it is supported by the record. State v. Taylor, 02-1063, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
Under LSA-C.Cr.P. art. 881.1(E), defendant is entitled to a review for statutory excessiveness only as to issues he has specifically raised below. In his Motion to Reconsider Sentence, defendant argued the trial court failed to consider that he had no weapon during the commission of the offenses, that he did not use force against his victims, and all of the offenses occurred within a short period of time.
The trial judge said in his reasons for sentencing that he had considered the provisions of LSA-C.Cr.P. art. 894.1. He found that, based on the seriousness of the instant offenses, and defendant's history of committing similar crimes, there was an undue risk that he would commit additional offenses were he not imprisoned. The trial court could have imposed sentences of up to forty years for each of defendant's first degree robbery convictions. The twenty-year sentences imposed were in the middle of the sentencing range.
*1163 In his Motion to Reconsider Sentence, defendant asserted that his sentences should have been made to run concurrently rather than consecutively. Defendant re-asserts that argument here. LSA-C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Defendant committed nine offenses on six separate days over the course of about two weeks. Each charge involved a different victim. While the offenses were similar in nature, they were not part of the same act or transaction for purposes of Article 883. Nor were defendant's actions part of a common scheme or plan. In State v. Wilson, 99-105, p. 4 (La.App. 5 Cir. 7/27/99), 742 So.2d 957, 959, writ denied, 99-2583 (La.2/11/00), 754 So.2d 935, this Court found that consecutive sentences are indicated under Article 883 where the bills of information allege offenses that occurred on different dates, and at different locations.
In State v. Dillon, 01-906 (La.App. 5 Cir. 2/26/02), 812 So.2d 770, writ denied, 02-1189 (La.4/21/03), 841 So.2d 779, the defendant received consecutive twenty-year sentences for five counts of distribution of cocaine. He was subsequently found to be a third felony offender. One of his five sentences was vacated, and he received a life sentence as a habitual offender. The judge ordered that the life sentence be served consecutively to the other four sentences. On appeal, the defendant made an excessive sentence claim, based in part on the judge's decision to have his sentences run consecutively. This Court found that the trial court did not err in running the sentences consecutively. The defendant's convictions resulted from five separate sales to two different undercover agents occurring over a three-month period. Based upon those factors, this Court held that the five sales were acts sufficiently separate and distinct to justify consecutive sentences. Dillon, 01-906 at p. 6, 812 So.2d at 774.
Defendant's consecutive sentences are justified because of the separate and distinct nature of the acts, and because of the seriousness of the offenses. In imposing sentence, the trial judge commented:
This is a very serious pattern of crimes. I know that these victims who operate these small shops that you preyed upon, their lives will never be the same when anyone enters their shop. They will be concerned and in fear that that person may again perpetrate a robbery on them, that they may be armed with a dangerous weapon, that they may be harmed, that they may in fact lose their life. That's a fear that they will have to live with based upon the types of actions that you perpetrated on them.
In denying defendant's Motion to Reconsider Sentence, the judge said, in part:
Based upon Mr. Hymes' past record and obviously, the number of crimes he committed over a period of time in this case; the Court believed that the sentence that the Court handed down to Mr. Hymes was appropriate. Mr. Hymes stopped his crime spree only because he was caught. Certainly, the Court has a concern over the safety of the citizens of the Parish of Jefferson.

*1164 In a case like this, it was obviously a number of different individuals and businesses who were affected by Mr. Hymes over a period of time. The Court finds that the sentence in Mr. Hymes' case was appropriate. The crimes were not all committed at the same time, on the same day. They deserve to be in the form of consecutive sentences.
Each sentence for each crime was the appropriate sentence for that crime; Mr. Hymes just happened to commit a large number of them. The Motion to Reconsider Sentence is denied.
We find the sentences imposed are supported by the record. Therefore, we affirm the defendant's sentence of 138 years total for all counts.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant has requested that this Court review the record for any patent errors. The Court conducted this review and notes three errors which are discussed below.
First, the commitment does not properly reflect the verdicts on counts one and seven. It shows that defendant was found guilty of attempted first degree robbery on count one, when defendant was actually found guilty of attempted simply robbery. The commitment shows that defendant was found guilty of first degree robbery on count seven, when he was found guilty of simple robbery. When the transcript and minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Behre, 03-896, p. 7 (La.App. 5 Cir. 12/9/03), 864 So.2d 668, 672. Therefore, we remand this matter with orders that the trial court correct the minute entry so that it reflects the proper verdicts.
Second, the trial court erred in failing to order that defendant's sentence on counts two, three, four, five, six, eight, and nine be served without benefit of parole, probation, or suspension of sentence, as is required by LSA-R.S. 14:64.1. However, no corrective action is necessary because the sentences are deemed to contain that restriction under LSA-R.S. 15:301.1.
And third, this Court notes a sufficiency of evidence problem not affirmatively raised by the defendant. In count one of the bill of information, the state charged defendant with attempted first degree robbery of Chelsea Portune on July 30, 2000. The jury rendered a verdict of guilty of attempted simple robbery.
LSA-R.S. 14:65(A) defines simple robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, but not armed with a dangerous weapon. LSA-R.S. 14:27(A) further provides that to attempt to commit a crime, an accused must do or omit an act tending directly toward the accomplishment of the crime while "having a specific intent" to commit the crime. In order to prove an attempted simple robbery, the state had to prove that defendant: (1) had a specific intent to commit the crime of simple robbery, and (2) did an act for the purpose of and tending directly toward the commission of the crime of simple robbery.
Nothing in the transcripts or minute entries shows that Chelsea Portune testified at trial. No one else testified at trial that they witnessed that offense. The only evidence in the record regarding the attempted robbery of Portune is the defendant's own recorded confession. In his third interview with defendant on August 2, 2000, Detective John Carroll asked whether the defendant recalled an attempted first degree robbery at the *1165 Tiffin Inn at 6601 Veterans. The defendant responded that he went into the Tiffin Inn and told the lady he was hungry and his family needed food. He further responded that the lady then walked away from him and he walked out of the store. Detective Carroll asked him if he got anything and the defendant responded "No." Detective Carroll then asked the defendant what the lady did when he implied he had a weapon and told her he needed money. The defendant responded that the lady walked away from him and he left.
In State v. Willie, 410 So.2d 1019, 1029 (La.1982), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984), the Louisiana Supreme Court noted:
It is well settled that an accused party cannot be legally convicted on his own uncorroborated confession without proof that a crime has been committed by someone; in other words, without proof of the corpus delicti.... The corpus delicti must be proven by evidence which the jury may reasonably accept as establishing that fact beyond a reasonable doubt....
(Internal citations omitted).
The Supreme Court outlined the rule of law regarding corpus delicti in State v. Brown, 236 La. 562, 571, 108 So.2d 233, 236 (1959):
In the trial of every criminal case the State, to warrant a legal conviction of an accused, must prove the corpus delicti, or the fact that a crime has been committed. Without such proof no conviction will be permitted to stand....
....
Suspicion, rumor, gossip, or mere hearsay evidence is not sufficient to establish the proof of corpus delicti, ...
In this case, the state failed to prove the corpus delicti with respect to the charge against the defendant in count one of the bill of information, which was the attempted first degree robbery of Chelsea Portune. Since the evidence is insufficient to support that conviction, we will modify the verdict by entering a judgment of acquittal with respect to that offense.

DECREE
In accordance with the above, we modify the verdict and enter a judgment of acquittal as to count one. As a result of that modification, we reverse defendant's sentence of three years as to count one. We affirm defendant's sentences on all other counts. We also remand this matter to the trial court for correction of the minute entry as discussed above in the error patent review.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Chelsea Portune, the alleged victim in the Tiffin Inn robbery, did not testify at trial. See discussion under Assignment of Error Number Two (errors patent), ante.