Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,443-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

Versus

KENYON L. DUNAMS                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 379,466

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Edward Kelly Bauman

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
REBECCA ARMAND EDWARDS
CHEYENNE YVETTE WILSON
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and MARCOTTE, JJ.

**STEPHENS, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable John Mosley, Jr., presiding.  A jury unanimously found the defendant, Kenyon L. Dunams, guilty of two counts of armed robbery in violation of La. R.S. 14:64, two counts of armed robbery with use of a firearm in violation of La. R.S. 14:64.3, and one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1.  The trial court sentenced Dunams to a total 95-year sentence.[1]  Dunams appeals and urges that the state lacked sufficient evidence to prove he committed armed robbery at the Thrifty Liquor Store.  Furthermore, Dunams contends his sentence is constitutionally excessive because the record does not support the imposition of consecutive sentences.  For the reasons expressed below, we affirm.

## FACTS & PROCEDURAL HISTORY

On October 28, 2020, at 11:00 a.m., an armed robber entered the Thrifty Liquor Store located on Youree Drive in Shreveport, Louisiana.  The liquor store clerk, Raymond Eason, dropped to the ground when the individual announced the robbery.  The robber approached Mr. Eason and picked him up by his belt loop.  The robber demanded that Mr. Eason open the register, and when the robber grabbed the money from the register, Mr. Eason testified he saw the robber was armed with a black gun.  Once the robber left the store, Mr. Eason called 911.

---

[1] The defendant was sentenced to 35 years for each count of armed robbery, five years for each count of use of a firearm during an armed robbery, and 15 years for possession of a firearm by a convicted felon, with the sentences being ordered to run consecutively, for a total of 95 years.

Corporal Denise Porter-Thornton of the Shreveport Police Department responded to the scene and described Mr. Eason as "very shaken up" when she spoke with him. Detective Melvin Smith also responded to the scene and described Mr. Eason as "a little shaken up." Det. Smith reviewed the surveillance footage and testified that the suspect on the video matched the description given by Mr. Eason, a black male of stocky build, around six feet tall, and dressed in black with a mask.

Approximately two hours after the Thrifty Liquor Store robbery, a masked individual entered the Papa John's located on Youree Drive in Shreveport. Samantha Droddy, a Papa John's worker, saw the individual and realized what was about to take place. She ran and yelled for others to run as well. Ms. Droddy stated she looked back and saw that the masked individual had the Papa John's district manager, Shilpan Patel, on the ground and was holding what looked to her to be a gun. As Ms. Droddy ran to neighboring businesses to seek help, she observed the masked individual exit the pizza place through the back door and get into a white Cadillac. Once the person entered the vehicle, Ms. Droddy stated the car drove west on the road to the left of the shopping center. Mr. Patel, the district manager, attempted to follow the white vehicle.

As Mr. Patel drove behind the vehicle, another police officer pulled ahead of him and began following the white Cadillac. Once this happened, Mr. Patel returned to the Papa John's and gave statements to the police. Mr. Patel described the individual as dressed in dark clothing with a mask and gloves. Ms. Droddy relayed the license plate number of the white vehicle to police. She also described the masked individual as wearing dark attire, including a hoodie and a mask.

2

Officer Jason Frazier with Shreveport Police pulled ahead of Mr. Patel to pursue the individual in the white vehicle. Ofc. Frazier observed the erratic driving of the car once he began his pursuit. Ofc. Frazier engaged his lights and sirens as the vehicle took off at a high rate of speed, disregarding stop signs and traffic lights. Lieutenant Jeff Peters of the Shreveport Police Department joined in the chase. After losing sight of the vehicle, Lt. Peters found it parked in a lot located near the intersection of Pierremont and Fairfield. Lt. Peters watched to ensure no one entered or exited the vehicle until other units arrived to assist in apprehending the suspect. Once other officers arrived on the scene, Ofc. Frazier and Lt. Peters approached the vehicle and detained the suspect. Ofc. Frazier recognized the suspect as the same individual who was in the vehicle when Ofc. Frazier initiated his pursuit. Officers identified the suspect as Kenyon Dunams.

After Dunams was taken into custody, officers recovered a stocking cap and a black semiautomatic handgun from the white vehicle's escape route. Officers submitted the items for DNA testing; and, although there was insufficient DNA on the gun, the DNA expert testified that the major contributor was consistent with Dunams' profile, linking him to the mask. Further investigation revealed that the robber's jacket had an insignia located between the shoulder blades. Surveillance footage from both Papa John's and Thrifty Liquor depicted the jacket with the insignia. Additionally, the white Cadillac used to escape the Papa John's robbery was registered to Dunams. From this vehicle, officers recovered a black, hooded jacket and two gloves.

On December 12, 2020, the State filed a bill of information charging Dunams with two counts of armed robbery and two counts of the additional

penalty for armed robbery with use of a firearm. The State later amended the bill of information to include possession of a firearm by a convicted felon. On February 24, 2022, Dunams appeared in court with retained counsel, waived formal arraignment, and entered a plea of not guilty. A jury trial commenced on December 5, 2022. On December 8, 2022, the jury returned a unanimous verdict of guilty as charged on all counts. Dunams filed a motion for post-verdict judgment of acquittal and a motion for new trial on January 18, 2023, but the trial court denied both motions that same day. The trial court sentenced Dunams to consecutive sentences of 35 years on the robbery convictions. In its reasoning, the trial court stated:

> So the Court having considered the testimony presented at trial as well as Articles 893, 894, as well as the defendant's criminal history, noting that a firearm was used in the commission of the offense as well as the defendant has several prior arrests and some convictions for armed robbery, two armed robberies were the subject of this sentencing, which he was convicted of, any lesser sentence will deprecate the seriousness of the crime; therefore, Court will sentence you to 35 years hard labor without benefit of parole, probation or suspension of sentence each count to run consecutively with each other, credit is given for time served.

However, the trial court vacated the sentences on January 23, 2023, because the trial court overlooked Dunams' convictions for use of a firearm in commission of the armed robberies and for possession of a firearm by a convicted felon.

At the resentencing hearing on January 23, 2023, the trial court stated it considered Dunams' criminal history, Articles 894 and 893, and the sentencing guidelines. The court stated it considered the multiple armed robberies as well as the use of a firearm in the commission of the armed robberies. The court then sentenced Dunams to 35 years for each count of armed robbery and to 15 years for possession of a firearm by a convicted

4

felon. The court ordered the sentences to run consecutively. On the armed robbery charges, the court imposed an additional five years for each count of armed robbery. In total, the court sentenced Dunams to 95 years. The trial court gave credit for time served, and it advised Dunams he had 30 days to appeal as well as his entitlement to post-conviction relief. Dunams objected to his sentence and has now appealed his convictions and sentences.

## DISCUSSION

On appeal, Dunams raises two assignments of error. First, Dunams urges that there was insufficient evidence presented by the State to sustain a conviction of armed robbery for the robbery that occurred at Thrifty Liquor Store. Second, Dunams contends that the imposition of consecutive sentences amounts to cruel and unusual punishment, and the 95-year sentence is unconstitutionally excessive. In return, the State suggests that it negated any reasonable probability of misidentification through the testimony and surveillance videos the jury viewed during the trial. Furthermore, the State argues that consecutive sentences were within the trial court's discretion, and the record supports the 95-year sentence.

### *Sufficiency of the Evidence*

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the

5

appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Burch*, 52,247 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1190.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Norman*, 51,258 (La. App. 2 Cir. 5/17/17), 222 So. 3d 96, *writ denied*, 17-1152 (La. 4/20/18), 240 So. 3d 926.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Baker*, 49,175 (La. App. 2 Cir. 8/27/14), 148 So. 3d 217. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. For a case resting essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Christopher*, 50,943 (La. App. 2 Cir. /16/16), 209 So. 3d 255, *writ denied*, 16-2187 (La. 9/6/17), 224 So. 3d 985.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951, *writ denied*, 17-1101 (La. 6/1/18), 243 So. 3d 1064. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 17-0352 (La. 11/17/17), 229 So. 3d 928. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Sosa*, 05-0213 (La. 1/19/06), 921 So. 2d 94; *State v. Hust*, s*upra*.

A reviewing court accords great deference to a fact finder's decision to accept or reject the testimony of a witness in whole or in part. *State v. Brown*, 51,352 (La. App. 2 Cir. 5/2/17), 223 So. 3d 88, *writ denied*, 17-1154 (La. 5/11/18), 241 So. 3d 1013. When a defendant challenges both the sufficiency of the evidence to convict and one or more trial errors, the reviewing court first reviews sufficiency, as a failure to satisfy the sufficiency standard will moot the trial errors. *State v. Hearold*, 603 So. 2d

7

731 (La. 1992); *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190.

La. R.S. 14:64(A) states:

> Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
> …

La. R.S. 14:64.3 provides in pertinent part:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
> …

La. R.S. 14:95.1(A) instructs:

> It is unlawful for any person who has been convicted of, or has been found not guilty by reason of insanity for, a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
> …

First, Dunams asserts that the jury erred in finding him guilty of robbing the Thrifty Liquor Store because Mr. Eason, the liquor store clerk, did not describe the robber in enough detail in his testimony at trial. In his

8

testimony, Mr. Eason recounted that he was stocking the shelves when the robber entered the store. Mr. Eason testified that after he dropped to the floor, the robber picked him up by the belt loop and instructed him to open the register. Mr. Eason described the robber as a male because the person picked Mr. Eason up by the belt and had a deep voice. Although Mr. Eason did not see the robber's face, he stated that the robber was wearing all black clothing. Similarly, Mr. Eason testified that the robber had a gun and remembered that the weapon's color was not silver.

During Mr. Eason's testimony, the State introduced surveillance video that captured the events he described. Mr. Eason identified himself on the video, and the jury had the opportunity to view the surveillance footage from the liquor store. The record indicates that the jury considered Mr. Eason's testimony as credible and concluded that Dunams was guilty of robbing Thrifty Liquor. Therefore, we cannot say Mr. Eason's testimony is insufficient to support the determination that Dunams robbed the liquor store.

Dunams also suggests that there was insufficient evidence to connect him to the liquor store robbery because the minor contributor of the DNA recovered from the mask found by police was never ascertained, and the surveillance videos introduced at trial do not clearly identify him as the robber at Thrifty Liquor Store. As to the DNA evidence, Ms. Katie Traweek, a forensic DNA analyst at the North Louisiana Crime Lab, testified about the process used in analyzing DNA profiles as well as her process for analyzing the DNA submitted in Dunams' case. Ms. Traweek stated she swabbed the mask herself for DNA and found a major and minor

9

contributor for DNA. The major DNA contributor, the person who left the most DNA on the mask, was consistent with Mr. Dunams.

As to the surveillance videos, the videos from both Thrifty Liquor and Papa John's were introduced at trial, and the jury had the opportunity to view both videos. Not only did the jury view the surveillance videos, but Louisiana State Trooper Shane Prothro, formerly employed with the Shreveport Police Department and assigned to the Tactical Robbery Unit at the time of the robberies, narrated the videos as they were played during his testimony. In his testimony, Trooper Prothro pointed out an insignia on the back of the robber's jacket during the Thrifty Liquor Store robbery surveillance video. In the Papa John's surveillance video, Trooper Prothro acknowledged in his testimony that the suspect was "dressed almost identical" to the individual observed on the surveillance footage from Thrifty Liquor. Again, Trooper Prothro discussed the insignia on the back of the suspect's jacket in the Papa John's footage. Trooper Prothro also identified the suspect as wearing a light gray shirt underneath a dark jacket or coat, gloves, dark pants, and dark shoes.

In this case, we find that the jury reasonably concluded that the person who robbed Thrifty Liquor was the same person who robbed Papa John's. Furthermore, the DNA evidence as well as the clothing Dunams was wearing at the time of his capture and the clothing recovered from his vehicle connect Dunams to the robberies. In reviewing the evidence in light most favorable to the prosecution, we conclude there was sufficient evidence for the jury to determine that Dunams robbed Thrifty Liquor Store as well as Papa John's.

10

*Excessiveness of Sentence*

In brief, Dunams admits that in his motion to reconsider sentence, he did not argue that the trial court failed to comply with La. C. Cr. P. art. 894.1. Rather, he contended that the court erred in ordering the two sentences for armed robbery to run consecutive to one another because the robberies should have been considered as part of a common scheme or plan, as they occurred a short time from each other and were charged in the same bill of information. For this reason, our review of Dunams' claim is for a bare claim of excessiveness. As such, this Court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Bell*, *supra*.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Bell*, *supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *Id.*; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, the appellate court does not determine whether another sentence may have been

more appropriate, but whether the trial court abused its discretion.  *State v. Bell*, *supra*; *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071.

In cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively.  *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031; *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836.  When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.  La. C. Cr. P. art. 883.  Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive.  *State v. Dale*, *supra*; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795.  It is within the court's discretion to make sentences consecutive rather than concurrent.  *State v. Dale*, *supra*; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034.

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms.  Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for defendant's rehabilitation, and whether the

12

defendant has received a benefit from a plea bargain. *State v. Dale*, *supra*; *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. *State v. Dale*, *supra*; *State v. Mitchell*, 37,916 (La. App. 2 Cir. 3/3/04), 869 So. 2d 276, *writ denied*, 04-0797 (La. 9/24/04), 882 So. 2d 1168; *State v. Strother*, 606 So. 2d 891 (La. App. 2 Cir. 1992), *writ denied*, 612 So. 2d 55 (La. 1993). However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Robinson*, *supra*.

La. R.S. 14:64(B) instructs that a person who commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. Furthermore, La. R.S. 14:64.3(A) provides that the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence when the dangerous weapon an offender uses during the commission of an armed robbery is a firearm. This five-year penalty is to be served consecutively to the sentence imposed. Finally, La. R.S. 14:95.1(B) states that when a felon is guilty of possessing a firearm, the person shall be imprisoned at hard labor for not less than five nor more than 20 years without the benefit of probation, parole, or suspension of sentence.

Our review of the jurisprudence shows that different victims, places, or dates mean different transactions and different schemes or plans. *See State v. H.B.*, 06-1436 (La. App. 3 Cir. 4/4/07), 955 So. 2d 255; *State v.*

13

*Dagenhart*, 39,874 (La. App. 2 Cir. 8/17/05), 908 So. 2d 1237, *writ denied*, 05-2421 (La. 4/24/06), 926 So. 2d 539.  In *State v. Hymes*, 04-320 (La. App. 5 Cir. 10/12/04), 886 So. 2d 1157, *writ denied*, 04-3102 (La. 4/1/05), 897 So. 2d 599, the defendant committed nine offenses on six separate days over the course of about two weeks, and each charge involved a different victim. Some of these offenses included robbing a hardware store, two restaurants, a clothing store, and a candy store.  More than one of these offenses occurred on the same day.  *Id*. at p. 10, 886 So. 2d at 1163.  The Fifth Circuit determined that each charge on the bill of information involved a different victim.  *Id*.  Furthermore, while the offenses were similar in nature, the court reasoned that they were not part of the same act or transaction nor were the actions part of a common scheme or plan.  *Id*.  The court ultimately held that the defendant's sentence of 138 years total for all counts was supported by the record because of the separate and distinct nature of the acts as well as the seriousness of the offenses. Id. at p. 10, 886 So. 2d at 1163-64.

While the trial court failed to address whether Dunams' offenses were part of a common scheme or plan, the record reflects that these offenses were separate and distinct acts.  First, the offenses occurred at two different locations: Thrifty Liquor Store and Papa John's.  Similarly, the offenses involved different sets of victims, and the offenses occurred two hours apart. Nothing in the record shows that Dunams strategically planned these robberies, and the record is silent as to what happened during the two hours between the robberies.  Consequently, we find that Dunams' actions were not part of a common scheme or plan.

At the first sentencing hearing, the trial court stated for the record that it considered the testimony presented at trial as well as Articles 893, 894,

14

and the defendant's criminal history. The court noted that a firearm was used in the commission of the offense, and that the defendant had several prior arrests and convictions for armed robbery. The court further opined that any lesser sentence would deprecate the seriousness of the crimes and then sentenced Dunams to 35 years hard labor without benefit of parole, probation, or suspension of sentence, with each count to run consecutively with the other with credit given for time served. At this particular hearing, the trial court failed to sentence Dunams on his conviction for a felon in possession of a firearm as well as to impose the enhancements for the armed robbery charges. Because of this, the trial court resentenced Dunams.

At the resentencing hearing, the trial court stated that it considered Dunams' criminal history, Article 894, and Article 893. Furthermore, the trial court noted Dunams had previously been involved in multiple armed robberies as well as considered the fact that a firearm was used in the commission of the armed robberies. Again, the court sentenced Dunams to 35 years for each count of armed robbery and 15 years on the possession of a firearm by a convicted felon. The court instructed that these sentences were to run consecutively. The court then imposed an additional five years at hard labor without the benefit of parole, probation, or suspension of sentence on each armed robbery conviction. As noted in the record, each sentence would be served without the benefit of parole, probation, or suspension of sentence with credit given for time served. In total, Dunams was sentenced to 95 years.

In these exchanges, we recognize that the trial court failed to articulate specific reasons for the consecutive sentences. Although we stated that Dunams' offenses were not considered to be a part of a common scheme or

15

plan, thereby not requiring the trial court to give particular reasons for a consecutive sentence, we urge trial courts to do their due diligence in articulating reasons for imposing sentences on defendants. Despite the trial court's minimal reasons for sentencing Dunams to consecutive sentences, we conclude that the record in this matter provides an adequate factual basis to support consecutive sentences in this case.

Although no presentence investigation report was requested in this matter, the State called Officer Chris Walker, an employee of the Office of Probation and Parole, to testify. Ofc. Walker informed the court that he supervised Dunams for two years following Dunams' conviction and sentence of attempted armed robbery on September 22, 2010. Ofc. Walker discussed that attempted armed robbery is a felony and a crime of violence, and he had supervised violent offenders during that time. In his testimony, Ofc. Walker stated that Dunams' end date for parole was October 3, 2019. Less than a year later, Dunams committed not one, but two armed robberies.

In this matter, both armed robberies involved several victims as well as created a serious danger to the victims as Dunams used a firearm in the commission of the robberies. The victims testified how they felt threatened and were worried for their safety while being held at gunpoint by Dunams. In Dunams' attempt to escape Papa John's, Ofc. Frazier testified he observed Dunams' vehicle starting to drive erratically, at which point Ofc. Frazier engaged his lights and sirens on his vehicle. However, Dunams took off at a high rate of speed instead of complying with the lights and sirens and pulling over. Ofc. Frazier testified that he observed Dunams disregard several stop signs and red lights and stated that there was traffic in the northbound and southbound lanes during the chase. Not only did he endanger the lives of his

victims, but Dunams also put at risk those driving when he fled from the police at a high rate of speed.

Lastly, the trial court imposed midrange sentences for each count of armed robbery and for the possession of a firearm by a convicted felon charge. For each armed robbery charge, the trial court sentenced Dunams to serve 35 years. The five-year enhancement for using a firearm as a dangerous weapon in the armed robbery was applied to each armed robbery conviction. Similarly, the trial court imposed a 15-year sentence for possession of a firearm by a convicted felon. Dunams was also given credit for time served. Given the facts of the case and the record before us, we cannot say Dunams' 95-year sentence shocks the sense of justice or is grossly disproportionate to the seriousness of the offense. Therefore, the trial court did not abuse its discretion in ordering the sentences to be served consecutively.

## CONCLUSION

For the foregoing reasons, we affirm Kenyon Dunams' convictions and 95-year sentence.

**AFFIRMED.**